UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD A. CHICHAKLI, : | |
| : | |
| Plaintiff, : | |
| : | |
| v.        : | Civil Action No. 15-1152 (CKK) |
| : | |
| JOHN KERRY, Secretary of State, *et al.*, : | |
| : | |
| Defendants. : | |

**MEMORANDUM OPINION**

This matter is before the Court on Defendants' Motion to Dismiss [ECF No. 14].[1] For the reasons discussed below, the motion will be granted.

I. BACKGROUND

The International Emergency Economic Powers Act ("IEEPA"), *see* 50 U.S.C. § 1701 *et seq.*, "authorizes the President to declare a national emergency when an extraordinary threat to the United States arises that originates in substantial part in a foreign state. Such a declaration clothes the President with extensive authority set out in 50 U.S.C. § 1702." *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 159 (D.C. Cir. 2003). Pursuant to the IEEPA and the United Nations Participation Act, *see* 22 U.S.C. § 287c, among other statutory provisions, former President George W. Bush issued an Executive Order titled Blocking Property of Certain Persons and Prohibiting the Importation of Certain Goods from Liberia. *See generally* Exec. Order No. 13348, 69 Fed. Reg. 44885 (July 22, 2004). Pursuant to Executive Order No. 13348,

---

[1] Also before the Court is plaintiff's Request for Expeditious Case Processing [ECF No. 23], which the Court will deny.

1

"all property and interests in property of [certain persons subject to sanctions] that [came] within the United States, or that [were] within the possession of or control of United States persons [were] blocked and [were] not to be transferred, paid, exported [or] withdrawn" unless permitted under IEEPA. *Id*., Sec. 1; *see generally* 31 C.F.R. Part 593 (July 1, 2005) (Former Liberian Regime of Charles Taylor Sanctions Regulations).

Defendants explain that the "[t]hese targeted sanctions [were] effectuated by informing the public and the financial sector of the identities of persons added to [a] list of designated persons and entities; such notice is required in order for banks and other relevant entities to block any accounts or other assets of the designated person[s] and report the existence of blocked property to" the Office of Foreign Assets Control ("OFAC"), a component of the United States Department of the Treasury. Defs.' Mem. in Support of the Mot. to Dismiss [ECF No. 15-1] ("Defs.' Mem.") at 1. "Financial institutions are expected immediately to block any transaction by a listed person or entity." *Id*. at 6.

In April 2005, OFAC designated plaintiff a Specially Designated National ("SDN") under Executive Order 13348:

> [T]he Executive Order authorized the freezing of the assets of 28 individuals who were deemed to be contributing to the unstable situation in Liberia as well as anyone found "acting or purporting to act for or on behalf of, directly or indirectly, any person whose property and interests in property are blocked pursuant to this order."  Viktor Bout was one of the individuals specifically listed in the Order.  After an investigation, OFAC determined that [plaintiff] was acting on behalf of Bout.  A Blocking Notice was issued, subjecting [plaintiff] to the sanctions set out in the Executive Order.

*Chichakli v. Szubin*, 546 F.3d 315, 316 (5th Cir. 2008); *see* Defs.' Mem. at 4-5. "Concurrently with the 2005 designation, in accordance with statute, executive order and regulation, the

Government identified [plaintiff] to financial institutions and the public in order to effectuate the designation." Defs.' Mem. at 1; *see id*. at 6. OFAC published plaintiff's name and other identifying information about him on its SDN List, *see* Compl. for Unwarranted Invasion of Privacy in Violation of the Privacy Act and Request for Various Reliefs [ECF No. 1] ("Compl.") ¶ 6(b), and which in turn "distributed [the SDN List] to financial institutions and others in order to effectuate OFAC blocking orders," Defs.' Mem. at 6. In December 2005, the United Nations listed plaintiff "as subject to sanctions in its Liberia sanctions regime." *Id*. Plaintiff unsuccessfully challenged the SDN designation in federal court. *See Chichakli*, 546 F.3d at 317-18. As long as "[Executive Order] 13348 remain[ed] in effect, [plaintiff's] assets within the jurisdiction of the United States [were] frozen and he [could] conduct no business with U.S. persons or financial institutions except as authorized by license." Defs.' Mem. at 5.

Defendants explain that, in November 2015, President Barack H. Obama issued Executive Order 13710 which terminated the emergency with respect to Liberia. Defs.' Reply Mem. in Support of the Mot. to Dismiss [ECF No. 19] at 1 (page numbers designated by ECF). Subsequently, OFAC removed plaintiff from the SDN List, *id*., and published a notice listing "the entries which [were] being removed from the SDN List in order to effectuate the removal," *id*. at 2 n.1.

Meanwhile, plaintiff "left the United State[s] to exile" on May 2, 2005. Supp. Mem. to Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss [ECF No. 18] ("Supp. Opp'n") at 2.[2] A grand jury indictment was returned on Nov[ember] 10, 2009" against plaintiff and Viktor Bout, and

---

[2] OFAC made its SDN designation on April 26, 2005, and "not until [January 2, 2013 was] plaintiff . . . officially charged with any crime." Supp. Opp'n at 1. Plaintiff objected to defendants' assertions that he was a fugitive in the interim or that he "fled the country" in 2005. *Id*.

was unsealed in February 2010. *Id.* A subsequent "indictment against plaintiff [alone] in Criminal Case 09-1002 (SDNY) was unsealed on [January 2,] 2013," *id.*, and plaintiff was returned to the United States in May 2013 upon his extradition from Australia, *see United States v. Chichakli*, No. S3 09CR1002, 2014 WL 5369424, at *1 (S.D.N.Y. Oct. 16, 2014). Plaintiff "was tried and convicted by a jury on all nine counts of an indictment charging as follows: one count of conspiracy to engage in business practices prohibited by [IEEPA], in violation of 50 U.S.C. § 1705 and 18 U.S.C. § 371; one count conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h); one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; and six counts of wire fraud, in violation of 18 U.S.C. §§ 1343, 2." *United States v. Bout*, No. 14-4255-CR, 2016 WL 3278785, at *1 (2d Cir. June 8, 2016); *see Chichakli*, 2014 WL 5369424, at *6.

In this civil action, plaintiff alleges that defendants disclosed information about him, including his social security numbers, date and place of birth, aliases, residence and business addresses, country of origin and driver's license number, *see* Compl. ¶¶ 1, 20, in violation of the Privacy Act, *see* 5 U.S.C. § 552a.[3] According to plaintiff, the disclosures are made principally by publication of the SDN List on OFAC's website, *see* Compl. ¶¶ 4, 6(a), 19, and by the United States Department of State to the United Nations, *see id.* ¶ 6(b).

As a result of the disclosures, plaintiff alleges, he "was targeted by and fell a victim to identity theft." *Id.* ¶ 7(b). He is aware of "several fraudulent bank accounts . . . establish[ed] using the [information] published [about him]," and he suspects that "many other fraudulent financial and non-financial activities are still undetected," *id.* ¶ 12. His requests to the Treasury

---

[3] Plaintiff explains that he "has more than one social security number" and that they "are officially joint together (linked) as of the day of plaintiff's discharge from his government service." Pl.'s Resp. to Defs.' Mot. to Dismiss [ECF No. 17] at 5; *see* Compl., Ex. 1 at 1-2; Supp. Opp'n at 3.

and State Departments for removal of his personal information have been denied, *see id*. ¶ 7(a), and the Federal Bureau of Investigation allegedly is aware of yet refuses to investigate the fraudulent transactions, *id*. ¶ 7(b). For this reason, plaintiff contends that the "government intentionally and deliberately published [p]laintiff's personal information to cause him harm by making him an easy target for identity theft." *Id*. ¶ 7(c). Plaintiff demands an award of $10 million, *id*. at 8, for the "direct injury" he allegedly has sustained "due to defendants' act[ions] when he fell victim to fraud," *id*. ¶ 12.[4]

## II. DISCUSSION

The Court begins its discussion by addressing plaintiff's reference to the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, specifically subsections (b)(3), (b)(6) and (b)(7)(C). *See* Compl. at 1 (unnumbered paragraph); Pl.'s Resp. to Defs.' Mot. to Dismiss [ECF No. 17] ("Pl.'s Opp'n") at 1-2. Under the FOIA, the Court may direct an agency to disclose improperly withheld agency records. *See Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980). It does not appear that plaintiff ever submitted a request for information to either the Treasury or the State Department, or that either agency disclosed information about plaintiff in response to a FOIA request. Notwithstanding the provisions cited by plaintiff, the FOIA and its statutory exemptions are not applicable in this case.

In broad and vague terms, plaintiff alleges that defendants "deprived [him of] constitutional rights," Compl. ¶ 15, protected under the First and Fifth Amendments, *see id*. ¶¶ 9, 23; Pl.'s Opp'n at 8. He does not demonstrate that the disclosure of plaintiff's social security

---

[4] Plaintiff's demand for injunctive relief in the form of "an order to compel the government to remove the illegally published personal information from all sources, Compl. at 8, appears to be moot in part because plaintiff no longer appears on the SDN List.

numbers and other identifying information by OFAC or the State Department violates the United States Constitution. *Cf. In re Crawford*, 194 F.3d 954, 658-60 (9th Cir. 1999) (finding that public disclosure of non-attorney bankruptcy petition preparer's social security number, which he was required to provide under 11 U.S.C. § 110(c), did not violate constitutional right to privacy). Moreover, because plaintiff's claims arise from "the improper disclosure of his personal information," Compl. at 1, if he is entitled to any relief, it would be under the Privacy Act. *See Chung v. U.S. Dep't of Justice*, 333 F.3d 273, 274 (D.C. Cir. 2003) (affirming dismissal of "constitutional claims because . . . they are encompassed within the remedial scheme of the Privacy Act"); *Tarullo v. Defense Contract Audit Agency*, 600 F. Supp. 2d 352, 358 (D. Conn. 2009) (finding that plaintiff's "allegations that the Defendant, on three occasions, wrongfully disclosed his [social security number] to a contractor for government-sponsored, contractor-issued travel charge card application "must be brought pursuant to the Privacy Act's 'catchall' civil remedy provision, 5 U.S.C. § 552a(g)(1)(D), under which the Plaintiff would be entitled only to damages"); *Mittleman v. U.S. Treasury*, 773 F. Supp. 442, 454 (D.D.C. 1991) (concluding that "plaintiff's constitutional claims regarding her records and any disclosures by defendants about those records are barred" by the Privacy Act).

### A. Privacy Act Claims Against the Individual Defendants

Plaintiff purports to bring this action against the Secretaries of Treasury and State in their official capacities only, and against OFAC's Director in both in his official and individual capacities. *See* Compl. at 1. The Privacy Act "concern[s] the obligations of agencies as distinct from individual employees in those agencies." *Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006). The claims against the Secretaries of Treasury and State and against OFAC's Director are treated as if plaintiff had brought them against the United States itself. *See Dick v.*

*Holder*, 67 F. Supp. 3d 167, 176 (D.D.C. 2014) (dismissing the Privacy Act claims against individual defendants and substituting Federal Bureau of Investigation as proper defendant); *Cloonan v. Holder*, 768 F. Supp. 2d 154, 163 (D.D.C. 2011). Plaintiff simply cannot bring Privacy Act claims against a government official or employee in his individual capacity and, therefore, the Court will dismiss the Secretaries of Treasury and State and OFAC's Director as parties in this action. *See Martinez*, 444 F.3d at 624 (affirming dismissal of individual defendants "because no cause of action exists that would entitle appellant to relief from them under the Privacy Act"); *Earle v. Holder*, 815 F. Supp. 2d 176, 180 (D.D.C. 2011), *aff'd*, No. 11-5280, 2012 WL 1450574 (D.C. Cir. Apr. 20, 2012) (dismissing complaint against the individual officials and substituting the Department of Justice as the proper defendant).

### B. *Privacy Act Claims Against OFAC*[5]

"The Privacy Act regulates the collection, maintenance, use, and dissemination of information about individuals by federal agencies." *Wilson v. Libby*, 535 F.3d 697, 707 (D.C. Cir. 2008) (internal quotation marks and citations omitted). No agency is permitted to "disclose any record which is contained in a system of records by any means of communication to . . . another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be . . . for a routine use as defined in subsection (a)(7) of this section and described under subsection (e)(4)(D)." 5 U.S.C. § 552a(b)(3). "The term 'routine use' means, with respect to the disclosure of a record, the use of such record for a purpose which is compatible with the purpose for which it was collected[.]" 5 U.S.C. § 552a(a)(7). An agency must "publish in the Federal Register upon

---

[5] For purposes of this Memorandum Opinion, the Court presumes without deciding that plaintiff's Privacy Act claims are not barred by the statute of limitations.

establishment or revision a notice of the existence and character of the system of records." 5 U.S.C. § 552a(e)(4).  Among other information, the notice must set forth "each routine use of the records contained in the system, including the categories of users and purpose of such use[.]" 5 U.S.C. § 552a(e)(4)(D).  "The government must therefore demonstrate both 'compatibility' and publication in the Federal Register in order to successfully invoke the routine use exception." *Radack v. U.S. Dep't of Justice*, 402 F. Supp. 2d 99, 105 (D.D.C. 2005) (citations omitted).

OFAC maintains the Records Related to Office of Foreign Assets Control Economic Sanctions system (DO.120) for "records related to the implementation, enforcement, and administration of U.S. sanctions." 79 Fed. Reg. 215 (Jan. 2, 2014).  According to the published System of Records Notice ("SORN"), these records include:

> Records related to . . . [i]nvestigations to determine whether an individual meets the criteria for designation or blocking and/or is determined to be a designated or blocked individual or otherwise affected by one or more sanctions programs administered by OFAC. In the course of an investigation, personally identifiable information is collected.  Once an individual is designated, OFAC provides personally identifiable information to the public so that it can recognize listed individuals and prevent them from accessing the U.S. financial system.  *The release of personally identifiable information pertaining to the designee is also important in helping to protect other individuals from being improperly identified as the sanctioned target*.  The personally identifiable information collected by OFAC may include, but is not limited to, *names and aliases, dates of birth, citizenship information, addresses, identification numbers associated with government-issued documents, such as driver's license and passport numbers, and for U.S. individuals, Social Security numbers*[.]

79 Fed. Reg. 216 (emphasis added). [6]  Routine uses of this information include:

---

[6] Such personally identifiable information can be used to determine that an individual is *not* on the SDN List.  *See, e.g., Cortez v. Trans Union, LLC*, 617 F.3d 688, 710 (3d Cir. 2010) (noting discrepancies between plaintiff's date of birth and middle name to those of a person on the SDN List, yet credit reporting agency indicated that plaintiff's name matched a name in OFAC database).

> (3) Disclos[ure] of information to the Departments of State, Justice, Homeland Security, Commerce, Defense, or Energy, or other federal agencies, in connection with Treasury licensing policy or other matters of mutual interest or concern . . . ;
>
> (8) Disclos[ure] of information to foreign governments and entities, and multilateral organizations—such as Interpol, the United Nations, and international financial institutions— consistent with law and in accordance with formal or informal international agreements, or for an enforcement, licensing, investigatory, or national security purpose . . . ; [and]
>
> (12) Disclos[ure] of information to the general public, in furtherance of OFAC's mission, regarding individuals and entities whose property and interests in property are blocked or otherwise affected by one or more OFAC economic sanctions programs, as well as information identifying certain property of individuals and entities subject to OFAC economic sanctions programs. This routine use includes disclosure of information to the general public in furtherance of OFAC's mission regarding individuals and entities that have been designated by OFAC. This routine use encompasses publishing this information in the Federal Register, in the Code of Federal Regulations, on OFAC's Web site, and by other means.

79 Fed. Reg. 217 (emphasis removed).

The SORN addresses OFAC's SDN List and the privacy interests of United States citizens appearing on it:

> Generally, the personal identifier information provided on the SDN List may include, but is not limited to, names and aliases, addresses, dates of birth, citizenship information, and, at times, identification numbers associated with government-issued documents. It is necessary to provide this identifier information in a publicly available format so that listed individuals and entities can be identified and prevented from accessing the U.S. financial system . . . . Because the SDN List is posted on OFAC's public Web site and published in the Federal Register and in 31 CFR Appendix A, a designated individual's identifier information can be accessed by any individual or entity with access to the internet, the Federal Register, or 31 CFR Appendix A. Thus, the impact on the individual's privacy will be substantial, but this is necessary in order to make targeted economic sanctions effective.

*Id*. (emphasis removed).

Defendants move to dismiss plaintiff's Privacy Act claims against OFAC on the ground that, consistent with OFAC's SORN, "[a]ll of the disclosures identified in the Complaint – including publication on the SDN List on OFAC's website, disclosure to international organizations, and other wise – fall within the published routine uses" for the Records Related to Office of Foreign Assets Control Economic Sanctions system. Defs.' Mem. at 13. According to defendants, disclosure not only is "compatible with the purposes of the system," but also is necessary "in order to effectively implement . . . sanctions." *Id*.

Plaintiff deems the "use" of his social security number anything but "routine." He opines that a social security number is "relevant only to the United States," and "means absolutely nothing . . . to the world outside of the United States[] with the exception [of] 'international identity [t]hieves' to whom it is worth a fortune." Compl. ¶ 16 (emphasis removed). In his view, "[i]t is an extraordinary event" to find that he is the only individual on an SDN List "of more than one quarter of a million names" whose social security numbers are listed. Pl.'s Opp'n at 2; *see* Compl. ¶ 25. Defendants respond by pointing to other examples of individuals whose social security numbers are published on the SDN List, *see* Reply Mem. in Support of Mot. to Dismiss [ECF No. 19] ("Reply") at 2-3 (page numbers designated by ECF), yet none of the parties explain the relevance of the regularity with which OFAC publishes the social security numbers of designated individuals who are United States citizens. Even if plaintiff were the only individual whose social security number appears, the rarity of this occurrence does not demonstrate that OFAC violated the Privacy Act by publishing plaintiff's social security numbers.

The Records Related to Office of Foreign Assets Control Economic Sanctions system maintains records pertaining to the enforcement of economic sanctions, and OFAC's disclosure

10

of personal information about individuals on the SDN List – including plaintiff for the time he was considered a Specially Designated National – is entirely consistent with OFAC's mission to implement and enforce economic sanctions. Therefore, the Court concludes that publication by OFAC of plaintiff's social security number, and all the other personal identifying information about him, is a permissible routine use of this information.

*C. Privacy Act Claims Against the State Department*

For purposes of this Memorandum Opinion, the Court presumes without deciding that the State Department "disclosed" information about plaintiff, even though OFAC already had made this same information publicly available on its SDN List. Defendants argue that the State Department, too, published personal information about plaintiff, including his social security number, as a permissible routine use. *See* Defs.' Mem. at 14-16.

The State Department maintains the Security Records system (State-36), about which it has published SORNs in the Federal Register. *See id*. at 14. Defendants represent that the original SORN and each of three subsequent amendments describe Security Records as including "information about . . . individuals whose activities other agencies believe may have a bearing on U.S. foreign policy interests." *See id*. (internal quotation marks and citations omitted). The current SORN, for example, states that the Security Records system contains "documents and reports furnished to the [State] Department by other Federal Agencies concerning individuals whose activities these agencies believe may have a bearing on U.S. foreign policy interests." 78 Fed. Reg. 27277 (May 9, 2013). Among the routine uses for Security Records are disclosures to:

> (c) Any Federal, state, municipal, foreign or international law enforcement or other relevant agency or organization for law enforcement or counterterrorism purposes: threat alerts and analyses, protective intelligence and counterintelligence

11

> information, information relevant for screening purposes, and other law enforcement and terrorism-related information as needed by appropriate agencies of the Federal government, states, or municipalities, or foreign or international governments or agencies; [and to]
>
> (f) A Federal, state, local, foreign, or international agency or other public authority that investigates, prosecutes or assists in investigation, prosecution or violation of criminal law or enforces, implements or assists in enforcement or implementation of statute, rule, regulation or order[.]

78 Fed. Reg. 27278.

Based on the plain language of the SORN, defendants maintain that any "[i]nformation provided [by the State Department] to the United Nations about an individual designated by OFAC for sanctions, with the aim of having the individual designated for similar sanctions by the UN Security Council, constitutes information provided to a 'foreign or international agency or other a public authority that . . . enforces, implements, or assists in the enforcement or implementation of a statute, rule, regulation or order.'" Defs.' Mem. at 15 (quoting 78 Fed. Reg. 27276). According to defendants, "[d]esignation for sanctions by the United Nations Security Council assists in implementation of the U.S. sanctions pursuant to . . . IEEPA, because designation by the Security Council requires all States to freeze the designated individuals' assets and prevent their nationals . . . from providing assets to or for the benefit of the designated individual." *Id*. The Court concurs with defendants' assessment that information supplied to the United Nations about an individual subject to sanctions "is . . . fairly considered 'law enforcement-related' information, and personally identifiable information would be [required in order that] the United Nations impose sanctions." *Id*. at 16.

Plaintiff contends that the State Department's disclosure to the United Nations differed from OFAC's disclosure because it included an additional piece of information – his driver's

license number – that had not been published previously on the SDN List. Pl.'s Opp'n at 8. The State Department's disclosure occurred in 2013, after plaintiff's arrest in Australia, at which time the State Department "updated the . . . United Nations Sanctioned List by adding plaintiff's driver license number to the list of personal information" previously transmitted to the United Nations.[7] *Id*. In his view, the State Department "did not merely restate[] and/or republish[] information that [had] been aired before by defendant U.S. Treasury or OFAC." Supp. Opp'n at 5; *see* Pl.'s Opp'n at 8. Rather, the State Department "uniquely published [his] driver license number and other details that were not aired previously," and this act violates the Privacy Act. Supp. Opp'n at 5. Plaintiff fails to notice, however, that "identification media (such as passports, residence, or driver's license information)," 78 Fed. Reg. 27277, are among the types of information about an individual maintained in the Security Records. It cannot be said that the State Department's addition of plaintiff's driver license number, which was passed on the United Nations, violates the Privacy Act, as the State Department may disclose information in its Security Records system to a foreign or international agency or organization with regard to the enforcement of OFAC or United Nations-imposed sanctions.

### D. Actual Damages

Among the remedies available to a plaintiff who prevails on his Privacy Act claim are actual damages. *See* 5 U.S.C. § 552a(g)(1)(D). If a plaintiff demonstrates an agency's "intentional or willful refusal or failure to comply with the Act, the United States shall be liable for actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000." *FAA. v. Cooper*, 132 S.

---

[7] The driver license was issued by the State of Victoria, Australia. *See* Compl., Ex. 1 at 1-2.

Ct. 1441, 1448-49 (2012) (internal quotation marks and citation omitted).  For purposes of the Privacy Act, actual damages are "special damages for proven pecuniary loss."  *Id*. at 1452.

Even if plaintiff had alleged a viable Privacy Act claim, and if he had shown defendants' actions to be willful and intentional, defendants argue that he has not incurred actual damages.  *See* Defs.' Mem. at 18.  Defendants deem plaintiff's complaint deficient because it fails to allege any special damages as is required under Federal Rule of Civil Procedure 9(g).  *See* Defs.' Mem. at 18.  Furthermore, defendants assert that neither plaintiff's identity theft allegations nor the existence of fraudulent accounts purportedly in plaintiff's name establish actual damage, particularly absent any indication that these accounts ever were active.  *Id*. at 18-19.  "Indeed, the existence of OFAC sanctions prevents accounts in [plaintiff's] name from doing any business in the United States."  *Id*. at 19; *see* Reply at 4.

Plaintiff alleges in his complaint that "several fraudulent bank accounts were establish[ed]" in his name, Compl. ¶ 12, and he suggests that his credit score will be affected negatively now that his personal information is available on the internet and from other sources, *id*. ¶ 11.  In other submissions, plaintiff states that fraudulent income tax returns have been filed under his social security numbers, *see* Supp. Opp'n at 5, and that credit cards have been issued using his personal information, *see id*.; Pl.'s Opp'n at 4.  Plaintiff explains that he cannot now determine "the actual sum of the dollar amount in damages . . . because there are many credit cards . . . still undiscovered and likely to be still in use."  Pl.'s Opp'n at 5.  He maintains that defendants' actions "caused the theft of [his] identity, and resulted in . . . serious, actual, and identifiable damages" to him in an amount that "is unknown at this point in time[.]"  Supp. Opp'n at 9-10.

The Court is persuaded that plaintiff "fail[s] to plead any cognizable pecuniary harm . . . due to an unlawful Privacy Act disclosure." Defs.' Mem. at 18. He does not allege and fails to demonstrate that he has sustained concrete and quantifiable damages.

## III. CONCLUSION

The Court concludes that plaintiff's complaint fails to state a claim upon which relief can be granted. Accordingly, defendants' motion to dismiss will be granted. An Order is issued separately.


DATE: August 19, 2016             /s/
                                  COLLEEN KOLLAR KOTELLY
                                  United States District Court Judge